# Big Beaver Creek Corporation *v.* Beaver County, Appellant.

*Bridges—Condemnation—Unattached lumber—Damages—Evidence.*

A county which has condemned and taken over a bridge from a bridge company is not entitled to unfinished lumber owned by the company and stored near the bridge, although such lumber is suitable to be cut up for bridge purposes, if it appears that no evidence concerning the lumber was submitted to the jury of view, and that the lumber had never become a part of the bridge, nor was necessary for the proper operation thereof.

Argued May 11, 1908. Appeal, No. 18, April T., 1908, by defendant, from judgment of C. P. Beaver Co., June T., 1906, No. 331, on verdict for plaintiff in case of The President, Managers and Company for Erecting a Bridge over Big Beaver Creek, at or near Wolf Lane, in the County of Beaver, a Corporation v. Beaver County. Before Rice, P. J., Porter, Henderson, Morrison, Orlady, Head and Beaver, JJ. Affirmed

Assumpsit for the value of lumber. Before Holt, P. J.

The opinion of the Superior Court states the facts of the case.

The court gave binding instructions for plaintiff. Verdict and judgment for plaintiff for $502.51. Defendant appealed.

*Error assigned* was in giving binding instructions for plaintiff.

*Henry H. Wilson*, for appellant.—Lumber and spikes kept by a bridge company for purposes of repair are fixtures and pass

with the realty: Covey for use v. P., Ft. W. & C. R. R. Co., 3 Phila. 173; Montgomery County v. Bridge Co., 110 Pa. 54; Williams' App., 1 Monaghan, 274.

Constituent parts of a plant, in duplicate and never attached to the realty, but held only for purposes of repair or possible need, are fixtures and pass with the realty: Voorhis v. Freeman, 2 W. & S. 116; Pyle v. Pennock, 2 W. & S. 390; Christian v. Dripps, 28 Pa. 271; Hill v. Sewald, 53 Pa. 271; Seeger v. Pettit, 77 Pa. 437, Williams' Appeal, 1 Monaghan, 274; Vail v. Weaver, 132 Pa. 363; Wick v. Bredin, 189 Pa. 83.

*Forest G. Moorehead,* with him *John M. Buchanan, James L. Hogan* and *Edwin S. Weyand,* for appellee.—Actual annexation is necessary before a chattel can be turned into realty: Capen v. Peckham, 35 Conn. 88; Williamson v. R. R. Co., 29 N. J. Eq. 311; Voorhis v. Freeman, 2 W. & S. 116; Pyle v. Pennock, 2 W. & S. 390; Wright v. Pyne, 17 Legal Int. 364; Cook v. Whiting, 16 Ill. 480; Hinkle v. Hinkle, 69 Ind. 134; Woodman v. Pease, 17 N. H. 282; Beard v. Duralde, 23 La. Ann. 284; Maxwell v. Willard, 1 W. N. C. 355; Peck v. Batchelder, 40 Vt. 233; Blue v. Gunn, 87 S. W. Repr. 408.

OPINION BY PORTER, J., October 15, 1908:

The county of Beaver instituted legal proceedings to condemn the bridge of the plaintiff company, and took possession of the bridge in July, 1904. There was an appeal from the report of the board of viewers to value the bridge and the jury trial upon that appeal was had in June, 1905, judgment being entered upon the verdict against the county in the following month. The plaintiff company owned about 20,000 feet of oak lumber, a part of which was piled in a private alley not far from one end of the bridge and the remainder was piled upon the approach to the other end of the bridge, at the time the county took possession of the bridge. The plaintiff company claimed this lumber and demanded the lumber or payment therefor; the representatives of the county caused the lumber to be measured and the value of it was agreed upon, the county commissioners agreeing to pay that price, if they were legally liable.

The plaintiff company brought this action, and after trial the learned judge of the court below instructed the jury that the plaintiff was entitled to recover, and the county appeals.

The contention of the county is that the lumber in question was a part of the bridge, and under the condemnation proceedings passed as such. The evidence disclosed that the lumber was in an unfinished condition, but of a character suitable for being cut into lengths and used for joists or planking upon the bridge. No part of the lumber had in any way been attached to or used in connection with the bridge. There was no evidence tending to establish that the plaintiff company had claimed or the defendant county had conceded, before the board of viewers or the jury which upon the appeal fixed the value of the bridge, that this lumber should be taken into consideration in determining what the bridge was worth. There was nothing in the evidence which would have warranted a finding that any testimony with regard to this lumber had been submitted to the board of viewers or the jury which passed upon the value of the bridge in the condemnation proceedings. There was not in the present proceeding any testimony as to the character or length of the bridge, nor was there any evidence which would have warranted a finding that it was necessary for the bridge company to have this quantity of lumber on hand in order to keep the bridge in proper repair. The defendant relied solely upon the facts that the bridge had been condemned and had become the property of the county; that the lumber had been owned by the bridge company and that it was stored in the vicinity of the bridge.

Chief Justice Gibson said, in Voorhis v. Freeman, 2 W. & S. 119: "Whether fast or loose, therefore, all the machinery of a manufactory which is necessary to constitute it, and without which it would not be a manufactory at all, must pass for a part of the freehold. This is no more than an enlargement of the principle of constructive attachment. . . . On the principle, then, that a thing temporarily severed from the freehold does not cease to belong to it, the whole set must be considered a part of the mill." The property in question in that case was a lot of rolls for a rolling mill, adapted to the manufacture of bars of

different shapes and sizes; when one size of iron was being rolled, the rolls for other sizes were taken out and the proper rolls placed in position. It was held that the entire set of rolls were a part of the mill, even those temporarily detached from the realty. It is to be observed that all the rolls had, in that case, been at some time attached to and used as a part of the machinery of the mill. The same principle was recognized in Pyle v. Pennock, 2 W. & S. 390; Christian v. Dripps, 28 Pa. 271, and Hill v. Sewald, 53 Pa. 271. Even where there has been a physical annexation of a chattel to the land, it will not become a part of the realty when such was not the intention of the parties: Seeger v. Pettit, 77 Pa. 437; Vail v. Weaver, 132 Pa. 363; Wick v. Bredin, 189 Pa. 83.

The learned counsel representing the appellant contends that the question whether personal property has become a part of a building or other structure depends not upon whether it has ever been in any manner attached to the building or structure, but that it is wholly dependent upon the intention of the parties. When the property in question has at some time and in some manner been attached to or used in connection with the house, factory or other structure, the intention of the parties in so attaching or using it, or in detaching it, is very often a controlling element in determining the question. The mere intention to attach, at some time in the future, raw materials, which have not been especially prepared, to a building or structure, to which they have never been attached and in connection with which they never have been used, is an entirely different matter. The intention with which something has been done is to be considered, but when nothing has been done, the unexecuted intentions of the parties can have no weight, in determining whether a chattel has become real estate: Johnson v. Mehaffey, 43 Pa. 308; Wright v. Pyne, 17 Legal Intelligencer, 364; Maxwell v. Willard, 1 W. N. C. 355. The lumber involved in this case may have been convenient for the bridge company to have on hand, in order that they might cut it into lengths required to make repairs, from time to time, or they may have bought the lumber when they had no present use for it, simply because they had an opportunity to buy at a bargain a thing

which they might have use for in the future. The bridge company might, so far as the evidence in this case discloses, have sold the lumber at any time, without incurring any risk of permitting the capacity or safety of the bridge to become impaired. The evidence would not have warranted a finding that the lumber had become a part of the bridge or was necessary for the proper operation thereof.

The judgment is affirmed.